# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JACKIE R. FISHER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | No. 18-cv-00467 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| LEONTA JACKSON, Warden, Lincoln | ) | |
| Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Jackie Fisher is serving a 25-year sentence in the custody of the Illinois

Department of Corrections at Lincoln Correctional Center, after being convicted on charges of

aggravated vehicular hijacking with a firearm and armed robbery with a firearm. Before the

Court is Fisher's *pro se* petition for a writ of *habeas corpus* under 28 U.S.C. § 2254, in which he

argues: (1) the Illinois Appellate Court[1] failed to follow precedent regarding scientific

considerations about the reliability of eyewitness testimony when it determined that the

eyewitness testimony against him was sufficiently reliable to support his conviction; (2) the State

failed to prove the existence of a firearm, an essential element of the crimes, beyond a reasonable

doubt; (3) the trial court erred by failing to suppress the testimony of the eyewitness who

identified him; (4) his trial counsel provided ineffective assistance because he failed to retain an

expert in eyewitness identification to refute the eyewitness's testimony; and (5) the prosecutor

---

[1] In his petition, Fisher attributes this failure to the Illinois Supreme Court. But as the Illinois Supreme Court denied Fisher's Petition for Leave to Appeal, the Court construes the claim as challenging the ruling of the Illinois Appellate Court, the last state court to adjudicate his case on the merits. *See* 28 U.S.C. § 2254(e)(1); *Rever v. Acevedo*, 590 F.3d 533, 537 (7th Cir. 2010); *Ward v. Sternes*, 334 F.3d 696, 704 (7th Cir. 2003).

engaged in misconduct during closing arguments by intentionally misrepresenting known facts

and mischaracterizing the evidence. For the reasons explained below, Fisher's petition is denied.

## BACKGROUND

A federal *habeas* court presumes correct the factual findings made by the last state court

to adjudicate the case on the merits, unless those findings are rebutted by clear and convincing

evidence. *See* 28 U.S.C. § 2254(e)(1); *Rever v. Acevedo*, 590 F.3d 533, 537 (7th Cir. 2010);

*Ward v. Sternes*, 334 F.3d 696, 704 (7th Cir. 2003). The last state court to make factual findings

in Fisher's case was the Illinois Appellate Court, as reflected in its opinion affirming the trial

court's judgment. *See People v. Fisher*, 2017 IL App (1st) 143869-U, 2017 WL 2694398, at *1

(Ill. App. Ct. June 20, 2017); *see also Mendiola v. Schomig*, 224 F.3d 589, 592–93 (7th Cir.

2000) (holding that state appellate court's factual findings are entitled to same deference as state

trial court's findings).

### I.      Trial Proceedings[2]

On October 3, 2012, Chicago police arrested Fisher after the victim of a carjacking,

Freeman Bacon, identified Fisher as one of two individuals who robbed him. Following a jury

trial, Fisher was convicted of aggravated vehicular hijacking with a firearm (720 ILCS 5/18–

4(A)(4)) and armed robbery with a firearm (720 ILCS 5/18–2(A)(2)).

#### A.      Testimony of Freeman Bacon

At Fisher's trial, Bacon testified that at 9:50 p.m. on October 3, 2011, he was sitting

alone smoking a cigarette in the driver's seat of his Dodge Charger near 604 South Kilpatrick.

Two men approached the car. One of the men tapped a gun on the driver-side window and told

---

[2] Except where otherwise indicated, all facts set forth in this section are taken from the Illinois Appellate
Court's opinion in *Fisher*, 2017 WL 2694398, at *1–3.

Bacon to unlock the door. The other man, who Bacon later identified as Fisher, opened the door and asked Bacon what items he had on him and where his phone was. According to Bacon, the man identified as Fisher was mere inches away from Bacon. Street lights from across the street and the interior dome light of the car—which turned on when Fisher opened the car door—provided enough light for Bacon to see Fisher's face. While his companion pointed the gun at Bacon, Fisher climbed over Bacon and searched through his pants pockets and the car for money and valuables for about 30 seconds. Fisher took approximately $80 in cash from Bacon's pockets and other valuables.

The two men then directed Bacon to run, telling him to decide between his car and his life. As Bacon ran south, he saw Fisher enter the passenger side of the car and the man with the gun enter the driver side. Fisher and his companion then drove away. Bacon entered a nearby building and called the police, who responded approximately 10 minutes later. Bacon gave the police a description of his car and the license plate number. He described the second of the two carjackers as a black male with short hair, 6 feet tall, wearing a grey hooded sweatshirt (or "hoodie") and dark jeans.

### B.      Testimony of Officer Salcedo

Officer Salcedo of the Chicago Police Department testified that on the night of October 3, 2012, he was on patrol with his partner in a marked squad car when he received a flash message regarding a carjacking at 604 South Kilpatrick at approximately 9:50 p.m. The message indicated that the car was a black Dodge Charger with tinted windows, a light-blue spoiler, and custom rims. The two perpetrators were described as a slim black male with short hair, 6 feet tall, with a grey hoodie and dark jeans, and a black male with dreadlocks, 5 feet 10 inches tall, with a black hoodie and dark jeans, carrying a gun.

3

Approximately 20 minutes later, Officer Salcedo noticed a Dodge Charger parked, but still running, on a residential street near 3838 West 18th Street. The Dodge Charger matched the description of the vehicle from the carjacking. Officer Salcedo verified the license plate number with dispatch and confirmed that it was indeed Bacon's car. There was no one in the car at the time.

Five to ten minutes later, Fisher opened the gate of the apartment complex at 3838 West 18th Street and walked towards the passenger side of the car. Officer Salcedo testified that Fisher matched the description of one of the perpetrators given over the broadcast: he was wearing a gray hoodie and dark jeans and appeared to be 6 feet tall. When Fisher was two to three feet away from the car, he stopped and looked at the police officers, then began to walk away. Officer Salcedo pulled up next to Fisher and asked him to approach the squad car. Fisher complied. The officers placed him in handcuffs and put him into the police car. Officer Salcedo informed the other police units that he had a possible suspect in custody.

About five minutes later, Bacon arrived in a squad car. From approximately 15 feet away, Bacon immediately identified Fisher as one of the perpetrators. The police then arrested Fisher. At this point, 53 minutes had elapsed since the carjacking.

### C.     Testimony of Officer Gozdal

Chicago Police Officer Gozdal testified that he was conducting a routine patrol with his partner Officer Chaiket on October 3, 2011, when they responded to a call about a vehicular hijacking. They arrived at 604 South Kilpatrick and spoke with Bacon. Officer Gozdal then sent a flash message over the radio describing the two offenders and providing the make, model, and license plate number of the stolen car. Within 20 to 25 minutes, he received a response that other officers had apprehended a possible suspect.

4

Officer Gozdal then brought Bacon to 3838 West 18th Street, approximately five to ten minutes driving distance away, where Officer Salcedo had found Bacon's car and detained Fisher. After Officer Gozdal had a brief conversation with Officer Salcedo, the latter took Fisher out of the back of the squad car and shined a light on his face. According to Officer Gozdal, Bacon, who remained in the back of Officer Gozdal's squad car about 15 to 20 feet away, immediately identified Fisher as the man who robbed him. Bacon also noted that Fisher was wearing a different sweatshirt than earlier.

### D. Testimony of Officer Buczkiewicz

Officer John Buczkiewicz, an evidence technician with the forensic services section of the Chicago Police Department, testified at trial that he arrived at the scene of Fisher's arrest around 11:00 p.m. on October 3, 2011. Bacon's car was locked. The exterior surface of Bacon's car was wet, so he could not obtain fingerprints. Officer Buczkiewicz did not follow up to try to obtain fingerprints from the inside of the car.

## II. Post-Conviction State Court Proceedings

### A. Direct Appeal

After hearing the evidence, the jury found Fisher guilty of both aggravated vehicular hijacking with a firearm and armed robbery with a firearm. The trial judge subsequently denied Fisher's motion for a new trial and sentenced him to 25 years in prison for each count, with the sentences to run concurrently.

Fisher appealed his conviction and sentence to the Illinois Appellate Court, claiming that (1) the State failed to prove him guilty beyond a reasonable doubt because Bacon's identification was unreliable and insufficient to support his convictions; (2) the State failed to prove the use of a firearm beyond a reasonable doubt; (3) the trial court erred by failing to suppress Bacon's

identifications of Fisher, which were the product of a highly suggestive show-up;[3] (4) Fisher's

trial counsel was ineffective because he failed to retain an expert witness regarding eyewitness

identification; (5) Fisher was denied a fair trial when the prosecutor misled the jury by

improperly asking a leading question about a material fact while questioning Officer Salcedo;

and (6) during closing arguments, the prosecutor improperly misstated several facts,

mischaracterized the evidence, and misled the jury with unfair analogies. On June 20, 2017, the

Illinois Appellate Court rejected Fisher's arguments and affirmed his conviction.

### B.     Petition for Leave to Appeal to the Illinois Supreme Court

On July 25, 2017, Fisher filed a petition for leave to appeal ("PLA") the Illinois

Appellate Court's decision affirming his conviction and sentence to the Illinois Supreme Court.

(Resp. to Pet. Ex. I at 22, Dkt. No. 13-9.) On November 22, 2017, the Illinois Supreme Court

denied his request. 93 N.E.3d 1087 (Ill. 2017). The present petition for a writ of *habeas corpus*

followed.

### LEGAL STANDARD

This Court may not issue the requested writ of *habeas corpus* unless Fisher demonstrates

that he is in custody in violation of the Constitution, laws, or treaties of the United States. 28

U.S.C. § 2254(a). As the state courts adjudicated Fisher's claims on the merits, this Court's

review of his *habeas corpus* petition is governed by the Antiterrorism and Effective Death

Penalty Act of 1996 ("AEDPA").

A federal court may not grant *habeas* relief unless the state court's decision on the merits

was contrary to, or involved an unreasonable application of, clearly established federal law as

---

[3] A show-up is the "practice of showing suspects to persons for the purpose of identification, and not as part of a lineup." *Stovall v. Denno*, 388 U.S. 293, 302 (1967); *see also Neil v. Biggers*, 409 U.S. 188, 196 (1972).

determined by the United States Supreme Court, or the state court decision is based on an unreasonable determination of facts. 28 U.S.C. § 2254(d). Applying this standard, "'[a] federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts.'" *Bell v. Cone*, 535 U.S. 685, 694 (2002). "An unreasonable application occurs when a state court identifies the correct legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of petitioner's case." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotation marks and citations omitted)). Clearly established federal law consists of the "'holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision.'" *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams*, 529 U.S. at 412). The state court is not required to cite, or even be aware of, the controlling Supreme Court standard, as long as the state court does not contradict the Supreme Court standard. *See Early v. Packer*, 537 U.S. 3, 8 (2002). The Court begins with a presumption that state courts both know and follow the law. *See Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). Moreover, the Court's analysis is "backward-looking." *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). In other words, the Court is limited to reviewing the record before the state court at the time that court made its decision. *Id*.

Ultimately, AEDPA's standard is "intentionally difficult for [a petitioner] to meet." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam). "As a condition for obtaining *habeas corpus* from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded [*sic*]

disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). This "highly deferential

standard . . . demands that state-court decisions be given the benefit of the doubt." *Woodford*,

537 U.S. at 24 (internal quotation marks and citations omitted).

## DISCUSSION

Fisher asserts five claims in his petition for *habeas* relief: (1) the Illinois Appellate Court

failed to follow precedent regarding scientific considerations about the reliability of eyewitness

testimony; (2) the State failed to prove the existence of a firearm beyond a reasonable doubt; (3)

the trial court erred by failing to suppress the testimony of the eyewitness who identified him; (4)

his trial counsel provided ineffective assistance by failing to retain an expert in eyewitness

identification; and (5) the prosecutor engaged in misconduct during closing arguments by

intentionally misrepresenting known facts and mischaracterizing the evidence.

### I.    Fisher's Procedurally-Defaulted Claim

As a threshold matter, the Respondent argues that Fisher's claim about prosecutorial

misconduct has been procedurally defaulted because he failed to raise it through a complete

round of state court review. This Court agrees.

Before reviewing a state court decision, this Court must determine whether the petitioner

fairly presented his federal claims to the state courts to avoid procedural default. *See O'Sullivan*

*v. Boerckel*, 526 U.S. 838, 848 (1999); *Bintz v. Bertrand*, 403 F.3d 859, 863 (7th Cir. 2005)

("The petitioner must establish that he fully and fairly presented his claims to the state appellate

courts, thus giving the state courts a meaningful opportunity to consider the substance of the

claims that he later presents in his federal challenge."). Here, the Illinois Appellate Court found

that Fisher forfeited his argument that the prosecutor engaged in misconduct because Fisher

neither objected to the remarks during trial nor included the claim in a post-trial motion. *See*

*Kaczmarek v. Rednour*, 627 F.3d 586, 592–93 (7th Cir. 2010) (holding that state court finding of forfeiture bars subsequent federal review). Moreover, in Illinois, fair presentment requires an appeal up to and including the filing of a PLA to the Illinois Supreme Court. *O'Sullivan*, 526 U.S. at 845–46. While Fisher filed a PLA, he did not include any arguments about prosecutorial misconduct. Therefore, Fisher's fifth claim is procedurally defaulted and may not be considered by this Court.

## II.       Fisher's Claims Regarding the Sufficiency of the Evidence

The Court next considers Fisher's claims that there was insufficient evidence to support his convictions. Specifically, Fisher contends that the Illinois Appellate Court erred in finding Bacon's eyewitness identification sufficiently reliable to support guilty verdicts. Similarly, Fisher contends that the State failed to provide sufficient evidence that a firearm was used in the crime, as there was no physical evidence of the firearm's existence.

This Court applies a "twice-deferential" standard in reviewing a state court's ruling on a sufficiency of the evidence claim. *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam). First, the Court must defer to the verdict because "'it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial.'" *Id.* (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam)). "The evidence is sufficient to support a conviction whenever, after viewing the evidence in the light most favorable to the prosecution, ***any*** rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (emphasis in original). Second, in addition to deferring to the jury's findings, the Court must accord deference to the state appellate court's opinion in accordance with § 2254(d), which allows for federal *habeas corpus* relief only if the state court's decision was contrary to, or an unreasonable application of, clearly established federal law. *Id.*

9

In general, "[a] positive identification by a single eyewitness who had ample opportunity to observe is sufficient to support a conviction." *People v. Piatkowski*, 870 N.E.2d 403, 411 (Ill. 2007). In Fisher's case, both the jury and the Illinois Appellate Court determined that Bacon's identification was sufficiently reliable to convict Fisher beyond a reasonable doubt. Indeed, Bacon testified that he had ample opportunity to observe Fisher during the encounter, which included a moment when Fisher was mere inches away from Bacon and 30 seconds of Fisher searching Bacon's pants pockets and car interior while Bacon was in the driver seat. Bacon also testified that there was adequate lighting from both the street light outside and the interior dome light of his car for him to see Fisher's face. And Bacon made two immediate positive identifications of Fisher. A rational juror could certainly have found Bacon credible and believed beyond a reasonable doubt that he correctly identified Fisher.

Fisher makes much of the fact that Bacon's identification was not supported by any physical or forensic evidence. But direct evidence is not required to sustain a criminal conviction, provided that the circumstantial evidence is sufficient to establish guilt beyond a reasonable doubt. *See Holland v. United States*, 348 U.S. 121, 138 (1954); *see also, e.g.*, *United States ex rel. Russell v. Gaetz*, 628 F. Supp. 2d 820, 844 (N.D. Ill. 2009) (denying petition for habeas relief based on state's lack of physical evidence). Here, considerable circumstantial evidence supported the jury's conclusion. For example, Officer Salcedo encountered Fisher near Bacon's stolen car, less than an hour after the crime occurred. Officer Salcedo testified that he saw Fisher come out of the residential building where the car was parked and walk towards the passenger side door, approaching within two to three feet. Officer Salcedo then observed Fisher look back at the police officers and walk off. A jury could reasonably have viewed Fisher's proximity to the stolen car shortly after the crime and his suspicious conduct upon noticing the

police presence as circumstantial evidence of his guilt. Accordingly, alongside Bacon's

testimony, the circumstantial evidence in the record was adequate such that no physical or

forensic evidence was required to sustain Fisher's conviction.

Moreover, under Illinois law, the crimes of aggravated vehicular hijacking and armed

robbery only require proof that the offender was armed with a firearm, and the definition of

firearm includes guns. *See* 430 ILCS 65/1.1. "The State does not have to prove the gun is a

firearm by direct or physical evidence; unequivocal testimony of a witness that the defendant

held a gun is circumstantial evidence sufficient to establish that a defendant was armed during a

[crime]." *People v. Fletcher*, 79 N.E.3d 280, 286 (Ill. App. Ct. 2017) (internal quotation marks

omitted). At trial, Bacon testified that when Fisher and his companion approached the car,

Fisher's companion tapped the barrel of a gun[4] against the driver-side window. Bacon also

testified that Fisher's companion pointed the gun at him while Fisher was searching for money

and valuables. Again, based on the evidence, a rational juror could have believed Bacon's

testimony that the perpetrators had a firearm, satisfying the requisite element of both crimes.

Therefore, as the Illinois Appellate Court recognized, there was sufficient evidence to support

the jury's verdict that Bacon committed aggravated vehicular hijacking with a firearm and armed

robbery with a firearm.

Fisher also argues that the Illinois Appellate Court failed to follow precedent concerning

the latest scientific research when it decided that Bacon's eyewitness identification was reliable

enough to support Fisher's conviction. Specifically, Fisher points out that in *People v. Lerma*, 47

---

[4] Fisher contests the Illinois Appellate Court's interpretation of Bacon's testimony, arguing that Bacon stated only that one of the perpetrators "tapped his car window with a black barrel," and not that the barrel was part of a gun or firearm. However, this Court presumes correct the Illinois Appellate Court's factual findings absent clear and convincing evidence, and Fisher's alternate explanation of Bacon's testimony constitutes neither.

N.E.3d 985, 993 (Ill. 2016), the Illinois Supreme Court acknowledged a "dramatic shift in the legal landscape" of eyewitness identification based on advances in scientific research revealing that "eyewitness identifications are not always as reliable as they seem." Fisher contends that *Lerma* required the Illinois Appellate Court to find Bacon's identification insufficiently reliable to sustain his conviction. But this Court's role is not to decide whether the Illinois Appellate Court's decision was contrary to **state** law decisions such as *Lerma*; rather, § 2254(d) permits federal *habeas corpus* relief only if the state court's decision was contrary to clearly established **federal** law. And here, the Illinois Appellate Court properly identified the constitutional standard for Fisher's challenge based on the sufficiency of the evidence and applied the relevant constitutional factors for assessing the reliability of identification testimony. *See Fisher*, 2017 WL 2694398, at *3; *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972).

In sum, it was not unreasonable for the jury to find that Bacon correctly identified Fisher and that Fisher and his companion were armed with a firearm. The Illinois Appellate Court's decision did not run afoul of clearly established federal law, and consequently, the Court cannot grant *habeas corpus* relief based on the insufficiency of the evidence.

III.     **Fisher's Claim that the Trial Court Erred by Failing to Suppress Bacon's Testimony**

Fisher also claims that the trial court erred when it denied his motion to suppress Bacon's testimony. Fisher made this argument on direct appeal, when it was denied by the Illinois Appellate Court. Subsequently, the Illinois Supreme Court denied Fisher's PLA. Fisher thus had a full and fair opportunity to litigate his claim in the state courts. Under these circumstances, the allegedly improper denial of the motion to suppress does not support a collateral attack on the conviction. *See Stone v. Powell*, 428 U.S. 465, 494 (1976); *Cabrera v. Hinsley*, 324 F.3d 527,

531 (7th Cir. 2003) (cert. denied, 540 U.S. 873 (2003)). Again, § 2254(d) provides that *habeas corpus* relief may not be granted unless the state court contravenes or unreasonably applies federal law, or makes a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court. Fisher has not met either of these conditions here.

In moving to suppress Bacon's identification, Fisher argued at trial that the police conducted a highly suggestive and unreliable show-up. As the Illinois Appellate Court recognized, Illinois courts use a two-step analysis when considering whether a show-up identification should have been suppressed: first, the defendant must prove that the confrontation was so unnecessarily suggestive and conducive to irreparable misidentification that he was denied due process of law; second, if the defendant overcomes the first hurdle, the State must then establish that, under the totality of the circumstances, the identification was independently reliable. *People v. Rodriguez*, 901 N.E.2d 927, 943 (Ill. App. Ct. 2008). While Fisher claims that subjecting him to a one-person show-up violated his due process rights, "Illinois courts have long held that an immediate show-up identification near the scene of the crime is proper police procedure." *People v. Thorne*, 817 N.E.2d 1163, 1175 (Ill. App. Ct. 2004) (collecting cases). Moreover, the Illinois Appellate Court reasonably concluded that Bacon's identification was independently reliable based on the evidence in the record—as discussed above, Bacon had adequate opportunity to view Fisher and the time that elapsed between the crime and the show-up was less than an hour.

Nor does the Illinois Appellate Court's decision contravene federal law. The United States Supreme Court has held that "the admission of evidence of a show[-]up without more does not violate due process." *Biggers*, 409 U.S. at 198. Rather, courts must consider whether "there was a good reason for the failure to resort to a less suggestive alternative," such as "confirming

that an individual apprehended close in time and proximity to the scene of a crime is, in fact, the suspected perpetrator of the crime." *United States v. Hawkins*, 499 F.3d 703, 707 (7th Cir. 2007). The Illinois Appellate Court engaged in that very analysis with respect to Fisher's show-up, finding that "the police officers were justified in conducting a one man show-up, in the manner in which it was conducted, because a prompt identification was necessary to inform police officers whether they needed to continue their search to find armed and dangerous offenders." *Fisher*, 2017 WL 2694398, at *6. And again, the record evidence supports the Illinois Appellate Court's conclusion: Fisher was apprehended near Bacon's stolen car,[5] five to ten minutes away from the crime scene, approximately 35 to 40 minutes after the crime occurred. Therefore, the denial of Fisher's motion to suppress is neither unreasonable nor a violation of clearly established federal law.

### IV. Fisher's Claim that His Trial Counsel was Ineffective for Failing to Retain an Expert in Eyewitness Identification

Finally, Fisher argues that he was denied the effective assistance of counsel at trial because his counsel failed to retain an expert in identification to attack the credibility of Bacon's testimony. To establish ineffective assistance of counsel, a petition must demonstrate both deficient performance and prejudice—a reasonable probability that but for counsel's errors, the jury would have returned a different verdict. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). While a counsel's failure to retain an expert may provide grounds for overturning a

---

[5] Fisher contests the Illinois Appellate Court's interpretation of the facts, claiming that he was "not arrested near or within the vehicle" but "simply walking in the direction of 'towards' [*sic*] the stolen vehicle in a parking lot." Fisher's attempt to distinguish between walking towards the car as opposed to near it is unconvincing. Regardless, Fisher has not provided any evidence to refute Officer Salcedo's testimony that, just before he was arrested, Fisher approached the car and was within two to three feet of it before he changed course and walked away.

conviction under *Strickland*, Fisher has not shown that the Illinois Appellate Court misapplied *Strickland* to such an extent that this Court should grant relief.

In rejecting Fisher's position, the Illinois Appellate Court recognized that eyewitness identification is an appropriate subject for expert testimony in some cases, but not Fisher's case, as Bacon's identification was not unreliable, vague, or doubtful. Furthermore, the Illinois Appellate Court recognized that Fisher's trial counsel conducted a "very thorough cross-examination of Officer Salcedo regarding the initial description of the offenders that went out in the flash message and whether defendant matched that description," including impeaching Officer Salcedo's trial testimony with the officer's testimony from the prior suppression hearing. *Fisher*, 2017 WL 2694398, at *7. Fisher's trial counsel also argued to the jury that the police identification methods were suggestive, Bacon's opportunity to observe was brief, and the presence of a weapon affects a victim's ability to identify the perpetrator. The Illinois Appellate Court ultimately found that the jury's decision to the contrary would not have been altered by expert witness testimony, and thus the decision not to enlist an expert witness was not "so unsound as to deny defendant a fair trial." *Id.* After reviewing the record, this Court agrees that there is considerable evidence in the record supporting Fisher's conviction, and thus any harm caused by his counsel's failure to call an expert witness to testify about the reliability of Bacon's identification would not have changed the outcome of his trial. *See Ouska v. Cahill-Masching*, 246 F.3d 1036, 1053–54 (7th Cir. 2001).

Fisher simply has not met his burden of showing that his counsel acted unreasonably or that the lack of expert witness testimony on his behalf was prejudicial within the meaning of *Strickland*, much less that the Illinois Appellate Court's judgment was "objectively

unreasonable" under AEDPA. *See Woods*, 15 S. Ct. at 1376. Thus, this basis for *habeas corpus* relief must be rejected as well.

**CONCLUSION**

For the foregoing reasons, Fisher's petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 is denied. Since reasonable jurists would not find the ruling debatable, this Court declines to certify any issues for appeal under 28 U.S.C. § 2253(c). *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Arrendondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008). Fisher is advised that this is a final decision ending his case before this Court. If he wishes to appeal, he must file a notice of appeal with this Court within 30 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). Fisher need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if he wishes to ask the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of the judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the motion has been ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the motion is ruled upon, only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

ENTERED:

Dated: August 12, 2019

_____

Andrea R. Wood
United States District Judge